## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS

Creative Dental Concepts, LLC and
Dr. Louie Khouri

      Plaintiffs,

v.

Kerr Corporation and
Envista Holdings Corporation,

      Defendants.

Civil Action No. \_\_\_\_-cv-_____

Jury Trial Demanded

---

## COMPLAINT FOR
## PATENT AND TRADEMARK INFRINGEMENT

Plaintiffs Creative Dental Concepts, LLC and Dr. Louie Khouri (collectively, "Plaintiffs") file this complaint against Defendants Kerr Corporation and Envista Holdings Corporation (collectively, "Defendants") for infringement of U.S. Patent Numbers 9,402,694 and 10,117,725 (collectively, the "Patents-in-Suit," attached as Exhibits 1 and 2, respectively), infringement of U.S. Trademark Registration No. 3,374,367 ("the '367 Registration," attached as Exhibit 3), infringement of Plaintiffs' unregistered trademarks and trade dress, and related state law claims, based upon Defendants' unauthorized manufacture, use, offer for sale, sale, and/or importation of the infringing products identified herein.

## THE PARTIES

1. Plaintiff Creative Dental Concepts, LLC ("CDC") is a Michigan limited liability company having an address at 32525 Stephenson Highway, Royal Oak, Michigan, 48701.

2.     Plaintiff Dr. Louie Khouri ("Dr. Khouri") is an individual whose address is 1331 Cedar Drive, Birmingham, MI 48009.

3.     Defendant Kerr Corporation ("Kerr") is a Delaware corporation with a principal place of business at 200 S. Kraemer Blvd., Building E, Brea, California, 92821.

4.     Envista Holdings Corporation ("Envista") is a Delaware corporation with a principal place of business at 200 S. Kraemer Blvd., Building E, Brea, California, 92821.

## JURISDICTION AND VENUE

5.     This action arises under the patent laws of the United States (Title 35 of the United States Code) and as a result this Court has subject matter jurisdiction pursuant to 35 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338 (jurisdiction over patent actions).

6.     This action also arises under the trademark laws of the United States (Title 15 Chapter 22 of the United States Code) and as a result this Court also has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

7.     This Court has supplemental jurisdiction over the state law counts for Defendants' deceptive trade practices, unfair competition, and unjust enrichment under 28 U.S.C. § 1367.

8.     This Court has personal jurisdiction over Defendants in accordance with due process and/or the Texas Long Arm Statute because, among other activities, Defendants conduct business in this state directly and/or through its operating companies and intermediaries, by shipping, distributing, using, offering for sale, selling, and/or advertising products and services in the United States, the state of Texas, and Eastern District of Texas, including, but not limited to, the accused products identified

below. Upon information and belief, Defendants have committed acts of patent infringement, trademark infringement, and deceptive trade practices/unfair competition in the state of Texas and in the Eastern District of Texas. Defendants solicit and have solicited customers in the state of Texas and in the Eastern District of Texas. Defendants have paying customers who are residents of the state of Texas and the Eastern District of Texas, and who use and have used the Defendants' products and services in the state of Texas and in the Eastern District of Texas.

9.   This Court also has personal jurisdiction over Defendants because Defendants have conducted and continue to conduct business in this judicial district and, upon information and belief, have engaged in activities related to CDC's claims of federal patent infringement, federal trademark infringement, and related state law business tort claims that establish minimum contacts with the state of Texas, including having committed acts of patent infringement, trademark infringement, and deceptive trade practices/unfair competition in this judicial district.

10.   This Court has personal jurisdiction over Defendants because Kerr is an operating company of Envista (Exhibit 4) and Kerr has in the past submitted to jurisdiction in this judicial district in connection with other lawsuits.  For example, Kerr submitted to personal jurisdiction in the Eastern District of Texas in a patent infringement lawsuit captioned *Photonic Curing LLC v. Kerr Corporation*, E.D. Tex. Case No. 2:15-cv-00634-RWS filed on May 8, 2015.  *See* Kerr's Answer, ECF No. 14, ¶¶5-6 (Exhibit 5).

11.   This Court also has personal jurisdiction over Defendants because on or around August 6 of 2009, Sybron Dental Specialties, Inc. ("Sybron") acquired Axis

Dental Corporation ("Axis Dental"), which has or had a principal place of business located at 800 W Sandy Lake Rd, Ste 100 Coppell, TX 75019-3816.  (Exhibit 6).  Kerr, Sybron, and Axis Dental are all operating companies, subsidiaries, and/or predecessors of interest of Envista and fall under Envista's corporate structure of related entities. (Exhibits 7-9).

12.   Defendants also operate a fully interactive website at www.kerrdental.com through which the products accused of infringement are advertised and can be purchased, including from customers located in the state of Texas and in the Eastern District of Texas. (Exhibit 10).  The exercise of personal jurisdiction over the Defendants is both reasonable and fair. Personal jurisdiction over Defendants may therefore be established under Fed. R. Civ. P. 4(k).

13.   Venue is proper in this district under 28 U.S.C. § 1391 for CDC's trademark infringement and related state law causes of action because Defendants have committed acts of trademark infringement and deceptive trade practices/unfair competition in this judicial district and venue is proper in this district under 28 U.S.C. § 1400(b) for CDC's patent infringement causes of action because Defendants have committed acts of patent infringement in this judicial district and have maintained regular and established places of business in the state of Texas and/or in this judicial district. By way of example and without limitation, Axis Dental and therefore the Defendants has or had a principal place of business at 800 W Sandy Lake Rd, Ste 100, Coppell, TX 75019-3816. Further, Ryan Cross, one of the product managers at Axis Dental/Sybron who was a representative for the accused products and who had

knowledge of the Patents-in-Suit, worked from the address listed above during the relevant time period.

14.   Venue over CDC's patent infringement causes of action is also proper in this judicial district under the pendent venue doctrine because CDC's patent infringement causes of action arise from the same nucleus of operative facts as CDC's trademark infringement and related state law causes of action.  For example, all of these claims stem from Defendants' decision to introduce a dental tool line that competes with CDC's QwikStrip® product line of dental tools.

**PLAINTIFFS' PATENTS**

15.   Dr. Khouri has a long history of creating innovative interproximal dental products.

16.   CDC is the exclusive Licensee of a portfolio of United States utility patents and international patents directed to Interproximal Dental Tools and methods for making such products.

17.   The Patents-in-Suit are a portion of CDC's licensed patent portfolio.

18.   Dr. Khouri, the named inventor and owner of the Patents-in-Suit, is a member and owner of CDC.

19.   U.S. Patent No. 9,402,694 ("the '694 Patent") entitled "Interproximal Dental Tool" was duly and legally issued by the U.S. Patent and Trademark Office ("USPTO") on August 2, 2016, and names Dr. Khouri as the sole inventor. A true and correct copy of the '694 Patent is attached as Exhibit 1.

20.   CDC is the exclusive licensee in and to the '694 Patent.

21.   The '694 Patent is valid, enforceable, and in full force and effect.

22.    U.S. Patent No. 10,117,725 ("the '725 Patent") entitled "Interproximal Dental Tool" was duly and legally issued by the USPTO on November 6, 2018, and names Dr. Khouri as the sole inventor. A true and correct copy of the '725 Patent is attached as Exhibit 2.

23.    CDC is the exclusive licensee to the '725 Patent.

24.    The '725 Patent is valid, enforceable, and in full force and effect.

25.    CDC manufactures its QwikStrip® product line of dental tools in its manufacturing facility in Royal Oak, Michigan.

26.    The QwikStrip® products practice the claims of the Patents-in-Suit.

**PLAINTIFFS' REGISTERED TRADEMARK**

27.    Dr. Khouri is the owner of the registered trademark "QwikStrip®" and all goodwill associated therewith.

28.    CDC is the exclusive licensee for the trademark "QwikStrip®".

29.    Interproximal dental tools sold under the QwikStrip® trademark have become very well-known in the dental industry and continued and substantial promotion by CDC and its authorized distributors has resulted in brand value and goodwill related to the QwikStrip® products.

30.    U.S. Trademark Registration No. 3,374,367 ("the '367 Registration") for the word mark QwikStrip® was duly registered by the USPTO on January 22, 2008. A true and correct copy of the '367 Registration is attached hereto as Exhibit 3.

31.    The '367 Registration was renewed under Sections 8 & 15 on June 6, 2017. The QwikStrip® trademark has been in continuous use in commerce within the United

States for a period of more than 5 years subsequent to the date of registration and therefore has become incontestable under 15 U.S.C. § 1065.

32.   CDC is the exclusive Licensee of the '367 Registration for the QwikStrip® trademark.

## PLAINTIFFS' UNREGISTERED TRADEMARKS AND TRADE DRESS

33.   Plaintiffs own unregistered trademarks in its product designations (product codes/SKUs) for the QwikStrip® product line of dental tools, including without limitation, the following product designations: QS-SF, QS-F, QS-M, QS-C, QSC-SF, QSC-F, QSC-M, QSC-C, QSDS-SF, QSDS-F, QSDS-M, and QSDS-C.

34.   Plaintiffs have made continuous use of these product designations for the QwikStrip® product line of dental tools in commerce within the United States for a period of more than 12 years. (Exhibit 11).

35.   CDC packages its QwikStrip® dental tools in partitioned clear plastic boxes/containers.  The inside surface of the lid on these boxes includes a guide to the different QwikStrip® dental tools contained in each partition.  This guide includes CDC's product designations, which dentists refer to when selecting dental tools during dental procedures and to identify which dental tools need to be re-ordered when supply dwindles.  *See* Figures 1 and 2 below. As a result, CDC's product designations for the QwikStrip® product line of dental tools have acquired meaning and function as source identifiers for CDC.



Figure 1 – QwikStrip® Ultimate 90 Pack



Figure 2 – QwikStrip® Ultimate 180 Pack

36.   CDC also owns unregistered trademarks in its color scheme / color coding for its QwikStrip® product line of dental tools.  For example and as shown in Figures 1 and 2 above, the Super Fine QwikStrip® products (QS-SF, QSC-SF, and QSDS-SF) are color coded with a yellow handle, the Fine QwikStrip® products (QS-F, QSC-F, and QSDS-F) are color coded with a red handle, the Medium QwikStrip® products (QS-M, QSC-M, and QSDS-M) are color coded with a blue handle, the Coarse QwikStrip® products (QS-C, QSC-C, and QSDS-C) are color coded with a green handle, and the Serated QwikStrip® product (QS-SER) is color coded with a white handle.

37.   CDC has made continuous use of its color scheme / color coding for its QwikStrip® product line of dental tools in commerce within the United States for a period of more than 12 years.

38.   Customers, such as dentists and dentist offices, commonly place orders and repurchase past orders using Plaintiffs' product designations.  These product designations are included on CDC's website and the websites of major dental tool distributors who carry QwikStrip® products, including Henry Schein Dental and Patterson Dental (Exhibits 12 and 13, respectively).  Dentists and dentist offices fill in these product codes on order forms from these distributors.  As a result, CDC's product designations for the QwikStrip® product line of dental tools have acquired meaning and function as source identifiers for CDC.

39.   Customers, such as dentists and dentist offices, also commonly use Plaintiffs' color scheme / color coding to select particular tools from the QwikStrip® product line of dental tools during a dental procedure according to Plaintiffs' IPR

Sequence Guide that is provided with the QwikStrip® product.  *See* Figure 3 below and Exhibit 14.



Figure 3 – QwikStrip® Assorted 10 Pack

40.    Customers, such as dentists and dentist offices, have become familiar with Plaintiffs' color scheme for the QwikStrip® product line of dental tools and commonly

place orders and/or repurchase tools using the color scheme / color coding for the QwikStrip® product line of dental tools.  As a result, CDC's color scheme / color coding for its QwikStrip® product line of dental tools has acquired meaning/distinctiveness and functions as a source identifier for CDC.

## DEFENDANTS' ACTIVITIES

41.    Defendants make, use, import, distribute, supply, market, offers for sale, and/or sell products under the Kerr company name that infringe one or more claims of the patents–in–suit including, but not limited to, Kerr's interproximal dental tools identified in Exhibit 15 (collectively, "the accused products").

42.    The accused products identified in Exhibit 15 are sold under the brand "SmartStrip".

43.    In August of 2006, Axis Dental began distributing CDC's QwikStrip® product line of dental tools and entered into a Purchase and Sales Agreement with CDC.

44.    In August of 2009, Axis Dental was acquired by Sybron, Kerr's parent corporation.  (Exhibit 6).

45.    Axis Dental continued to distribute CDC's QwikStrip® product line of dental tools after being acquired by Sybron.

46.    In June of 2013, Sybron sent a representative by the name of Michael Turner to tour CDC's manufacturing facility in Royal Oak, Michigan.  Mr. Turner signed a Non-Disclosure Agreement with CDC prior to touring CDC's facility.

47.    Following Mr. Turner's tour of CDC's manufacturing facility, Kerr began selling the accused SmartStrip products in commerce on or about April 1, 2016.

48. Kerr's SmartStrip products have the same color scheme / color coding as CDC's QwikStrip® products and Kerr selected product designations (SKUs) for the SmartStrip products that are confusingly similar to CDC's product designations (SKUs) for the QwikStrip® products.

49. For example and as shown in Figure 4 below, the Superfine SmartStrip products (SS-SF, SSC-SF, and SSDS-SF) are color coded with a yellow handle, the Fine SmartStrip products (SS-F, SSC-F, and SSDS-F) are color coded with a red handle, the Medium SmartStrip products (SS-M, SSC-M, and SSDS-M) are color coded with a blue handle, the Coarse SmartStrip products (SS-C, SSC-C, and SSDS-C) are color coded with a green handle, and the Serated SmartStrip product (SS-SER) is color coded with a white handle.

## Single-Sided - 10 per pack



| Grit<br>THICKNESS* (mm) | Coarse<br>0.18 | Medium<br>0.14 | Fine<br>0.10 | Superfine<br>0.08 |
|---|---|---|---|---|
| MFG. NO. | SS-C | SS-M | SS-F | SS-SF |
| Assortment | SS-ASST (2 of each and (2) SS-SS) | | | |

## Double-Sided - 10 per pack



| Grit<br>THICKNESS* (mm) | Coarse<br>0.35 | Medium<br>0.22 | Fine<br>0.20 | Superfine<br>0.18 |
|---|---|---|---|---|
| MFG. NO. | SSDS-C | SSDS-M | SSDS-F | SSDS-SF |
| Assortment | SSDS-ASST (2 of each and (2) SS-SS) | | | |

## Curved Single-Sided- 10 per pack



| Grit<br>THICKNESS* (mm) | Coarse<br>0.18 | Medium<br>0.14 | Fine<br>0.10 | Superfine<br>0.08 |
|---|---|---|---|---|
| MFG. NO. | SSC-C | SSC-M | SSC-F | SSC-SF |
| Assortment | SSC-ASST (2 of each and (2) SS-SS) | | | |

* Thickness is approximate        ■ 120-135 Micron    ■ 100-120 Micron    ■ 45 Micron    ■ 35 Micron

### Serrated - 10 per pack

| Grit<br>THICKNESS* (mm) | Serrated<br>0.05 |
|---|---|
| MFG. NO. | SS-SS |

**Kerr**

Figure 4 – SmartStrip Sales Sheet US - EN

14

50.    As shown in Figures 5-7 below, Kerr's SmartStrip products, packaging, and instructions for use (i.e., the IPR Sequence Guide) emulate and have the same look and feel as CDC's QwikStrip® products.



Figure 5 – Comparison of CDC's QwikStrip Packaging (Top) to Kerr's SmartStrip Packaging (Bottom)



Figure 6 – Comparison of CDC's QwikStrip Products (Bottom) to Kerr's SmartStrip Products (Top)



Figure 7 – Comparison of CDC's QwikStrip IPR Sequence Guide (Bottom) to Kerr's SmartStrip IPR Sequence Guide (Top)

51.     When Kerr introduced the accused SmartStrip products in commerce on or about April 1, 2016, Kerr placed a notice on its website falsely informing customers and distributors that CDC's QwikStrip® products were no longer available.

52.   Kerr also had Henry Schein remove the listing for CDC's QwikStrip® products and replace it with a confusingly similar listing for Kerr's SmartStrip products in Henry Schein's 2016 Catalogue.   This was done without CDC's consent and caused CDC to miss an entire advertising cycle in the Henry Schein catalogue. Compare the 2015 Henry Schein Catalogue listing CDC's QwikStrip® products (Exhibit 16) to the 2016 Henry Schein Catalogue with Kerr's SmartStrip replacement listing (Exhibit 17).

53.   When Kerr introduced the accused SmartStrip products in commerce on or about April 1, 2016, it also attempted to have distributors, including Patterson Dental and Henry Schein, "auto-substitute" its SmartStrip products for CDC's QwikStrip® products even though the QwikStrip® products were still available from CDC.

54.   Kerr had notice of at least U.S. Patent Application No. 11/008,805, published as U.S. 2006/0127845 A1 (now the '694 Patent), at least as early as April 9, 2014, when Dr. Khouri and Dr. Khouri's patent attorney had ongoing communications with Ryan Cross and Mike Turner at Sybron Dental and Mr. Rajiv Yadav, Chief Intellectual Property Counsel of Kavo Kerr Group, regarding evidence for possible submission to the USPTO in support of patentability. (Exhibit 18)

55.   Kerr cited published application number U.S. 2006/0127845 A1, now the '694 Patent, in a series of U.S. patent applications relating to the accused products filed with the USPTO beginning September 29, 2014, including at least the applications that matured into U.S. 9,277,975, U.S. D751,708, U.S. D759,247, U.S. D768,298, U.S. D768,857, and U.S. D779,672.

56.   On October 20, 2016, during prosecution of the application that matured into U.S. D779,672, the Examiner at the USPTO cited the '694 Patent to the Applicant

(Kerr).  As a result, Kerr knew the '694 Patent had issued at least as early as October 20, 2016.  (Exhibit 19, p. 15).

57.   On June 17, 2020, Dr. Khouri's patent counsel sent a letter to Kerr's General Counsel, Mr. Paul Hodgdon, via certified U.S. mail.  The letter formally advised Kerr of the patent portfolio covering the QwikStrip® product line of dental tools, including the '694 Patent and the '725 Patent, and explained that "[t]he SmartStrip™ products have been analyzed against the claims of the subject IP and are believed to clearly fall within the scope thereof."  (Exhibit 20).

58.   The letter to Mr. Hodgdon was acknowledged by return receipt.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NUMBER 9,402,694

59.   CDC incorporates by reference and realleges the allegations contained in all of the preceding paragraphs as if fully set forth herein.

60.   As described below, in violation of at least 35 U.S.C. § 271(a), Defendants infringe and/or have infringed, directly or indirectly, and literally or under the doctrine of equivalents, at least claim 1 of the '694 Patent by importing, making, using, offering to sell, and/or selling products accused of infringing the '694 Patent in the United States without a license or permission from CDC, including and without limitation Kerr's SmartStrip product line of dental tools, which include at least the following SKUs: SS-SS, SS-ASST, SS-C, SS-F, SS-M, SS-SF, SSDS-ASST, SSDS-C, SSDS-F, SSDS-M, SSDS-SF, SSC-ASST, SSC-C, SSC-F, SSC-M, SSC-SF (hereafter "the Accused Products").

61.   Claim 1 of the '694 Patent reads as follows:

1. An interproximal dental tool comprising:

at least one blade; and
a substantially U-shaped thermoplastic housing fixed to said blade, said housing including a body sized to fit substantially within a patient's mouth, having spaced apart first and second ends, a terminal edge extending between said first and second ends adjacent to the at least one blade, an outer edge which is thicker than the terminal edge and opposing side walls which extend from the outer edge to the terminal edge and include a concaved portion;
whereby said at least one blade includes a first edge area extending along the length of said at least one blade which is permanently fixed within said substantially U-shaped housing and an exposed portion extending from the terminal edge and between the first and second ends, said exposed portion including at least one of serrations or abrasive material for detaching unwanted dental material from teeth, wherein said at least one blade is designed for use within an interproximal space between teeth, and said terminal edge of the substantially U-shaped housing provides a stop which upon complete insertion between the teeth limits insertion of the at least one blade between the teeth such that said at least one blade cannot substantially penetrate the gum line during use.

62.    As shown in the claim chart attached as Exhibit 21, the Accused Products directly infringe at least claim 1 of the '694 Patent under 35 U.S.C. § 271(a) because the Accused Products possess each and every element of claim 1 of the '694 Patent.

63.    Further, in violation of at least 35 U.S.C. § 271(g), Defendants import, offer to sell, sell, and/or use within the United States, products which are made by the method patented in at least claim 7 of the '694 Patent, including and without limitation the Accused Products identified above. On information and belief, the Accused Products are neither materially changed by subsequent processes prior to their sale, nor do they become a trivial and nonessential component of another product.

64.    Claim 7 of the '694 Patent reads as follows:

7.   A method of manufacturing an interproximal dental tool comprising:
a. positioning at least one blade including a first edge area along the length thereof and means for detaching unwanted material from teeth within an injection molding cavity; and
b. injecting thermoplastic material into the molding cavity such that a substantially U-shaped housing body sized to fit substantially within a

patient's mouth having an outer edge, first and second side walls extending from said outer edge to a terminal edge said side walls including a concaved portion, and spaced apart first and second ends which define at least one recess into which the at least one blade projects, wherein said terminal edge extending between said first and second ends is formed around the blade embedding a substantial portion of a blade along substantially the entire first edge area and leaving the means for detaching unwanted material from teeth freely exposed whereby said terminal edge of the housing provides a stop which upon complete insertion between the teeth, limits insertion of the at least one blade between the teeth such that said at least one blade cannot substantially penetrate the gum line.

65.   On information and belief, the Accused Products are made by a method of:

a. positioning at least one blade including a first edge area along the length thereof and means for detaching material from teeth within an injection molding cavity; and

b. injecting thermoplastic material into the molding cavity such that a substantially U-shaped housing body sized to fit substantially within a patient's mouth having an outer edge, first and second side walls extending from said outer edge to a terminal edge said side walls including a concaved portion, and spaced apart first and second ends which define at least one recess into which the at least one blade projects, wherein said terminal edge extending between said first and second ends is formed around the blade embedding a substantial portion of a blade along substantially the entire first edge area and leaving the means for detaching unwanted material from teeth freely exposed whereby said terminal edge of the housing provides a stop which upon complete insertion between the teeth, limits insertion of the at least one blade between the teeth such that said at least one blade cannot substantially penetrate the gum line.

66.   CDC has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are at least liable to CDC in an amount that compensates CDC for such infringement, which by law cannot be less than a reasonable royalty together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

67.   Defendants' infringement of CDC's '694 Patent has caused, and will continue to cause, CDC to suffer substantial and irreparable harm unless Defendants are enjoined by this Court pursuant to 35 U.S.C. § 283.

68.   Defendants have been on notice of and have had actual knowledge of the '694 Patent and their infringement of the '694 Patent since at least as early as June 17, 2020.

69.   Defendants' infringement of the '694 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of CDC's rights. Defendants' willful infringement entitles CDC to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 10,117,725

70.   CDC incorporates by reference and realleges the allegations contained in all of the preceding paragraphs as if fully set forth herein.

71.   As described below, in violation of at least 35 U.S.C. § 271(a), Defendants infringe and/or have infringed, literally or under the doctrine of equivalents, at least claim 1 of the '725 Patent by importing, making, using, offering to sell, and/or selling the Accused Products in the United States without a license or permission from CDC.

72.   Claim 1 of the '725 Patent reads as follows:

> 1. An interproximal dental tool comprising:
>     at least one blade; and
>     a substantially u-shaped thermoplastic housing secured to said at least one blade, said substantially u-shaped thermoplastic housing including a body having an outer edge that includes spaced apart first and second grip ends that are angled so as to at least partially diverge away from each other proximate terminal ends thereof, said outer edge and said first and second grip ends including concave portions, a terminal

inner edge extending between said first and second grip ends, said outer edge being thicker than the terminal inner edge, and opposing side walls which extend from the outer edge to the terminal inner edge;

whereby said at least one blade includes an exposed portion including at least one of serrations or abrasive material for detaching unwanted material from teeth.

73.    As shown in the claim chart attached as Exhibit 22, the Accused Products directly infringe at least claim 1 of the '725 Patent under 35 U.S.C. § 271(a) because the Accused Products possess each and every element of claim 1 of the '725 Patent.

74.    As described below, in violation of at least 35 U.S.C. § 271(a), Defendants infringe and/or have infringed, literally or under the doctrine of equivalents, at least claim 7 of the '725 Patent by importing, making, using, offering to sell, and/or selling the Accused Products in the United States without a license or permission from CDC.

75.    Claim 7 of the '725 Patent reads as follows:

7. An interproximal dental tool comprising:
at least one blade; and
a substantially u-shaped thermoplastic housing secured to said at least one blade, said substantially u-shaped thermoplastic housing including a body having an outer edge and spaced apart first and second grip ends that are angled so as to at least partially diverge away from each other proximate terminal ends thereof, a terminal inner edge extending between said first and second grip ends, said outer edge being thicker than the terminal inner edge, and opposing side walls which extend from the outer edge to the terminal inner edge;

whereby said at least one blade includes an exposed portion including at least one of serrations or abrasive material for detaching unwanted material from teeth, wherein the body is concaved along at least one of side walls between the first and second grip ends.

76.    As shown in the claim chart attached as Exhibit 22, the Accused Products directly infringe at least claim 7 of the '725 Patent under 35 U.S.C. § 271(a) because the Accused Products possess each and every element of claim 7 of the '725 Patent.

77.    As described below, in violation of at least 35 U.S.C. § 271(a), Defendants infringe and/or have infringed, literally or under the doctrine of equivalents, at least claim 8 of the '725 Patent by importing, making, using, offering to sell, and/or selling the Accused Products in the United States without a license or permission from CDC.

78.    Claim 8 of the '725 Patent reads as follows:

> 8. An interproximal dental tool comprising:
>         at least one blade; and
>         a substantially u-shaped thermoplastic housing secured to said at least one blade, said substantially u-shaped thermoplastic housing including a body having spaced apart first and second grip ends, a terminal inner edge extending between said first and second grip ends, an outer edge which is thicker than the terminal inner edge and having a portion that is thinner than said first and second grip ends, said outer edge and said first and second grip ends including concave portions, opposing side walls which extend from the outer edge to the terminal edge and taper in the direction of the terminal edge, and at least one hole disposed in the body for receiving a tether;
>         whereby said at least one blade includes an exposed portion including at least one of serrations or abrasive material for detaching unwanted material from teeth.

79.    As shown in the claim chart attached as Exhibit 22, the Accused Products directly infringe at least claim 8 of the '725 Patent under 35 U.S.C. § 271(a) because the Accused Products possess each and every element of claim 8 of the '725 Patent.

80.    Defendants' infringement of CDC's '725 Patent has caused, and will continue to cause, CDC to suffer substantial and irreparable harm unless Defendants are enjoined by this Court pursuant to 35 U.S.C. § 283.

81.    Defendants' infringement of the '725 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of CDC's rights. Defendants' willful infringement entitles CDC to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**COUNT III**

**VIOLATION OF SECTION 32 OF THE LANHAM ACT**
**(INFRINGEMENT OF U.S. TRADEMARK REGISTRATION NO. 3,374,367)**

82.   CDC incorporates by reference and realleges the allegations contained in all of the preceding paragraphs as if fully set forth herein.

83.   Defendants have used, and are continuing to use, in interstate commerce and without authorization from CDC, a reproduction, copy, and/or colorable imitation of the mark of CDC's '367 Registration, QwikStrip®, by advertising, promoting, distributing, offering for sale, and selling interproximal dental tool products under the name SmartStrip.

84.   Defendants adopted and began using the SmartStrip name on similar products after Axis Dental/Sybron discontinued distribution of CDC's QwikStrip® product line without notice.

85.   Defendants' use of the SmartStrip name is similar in appearance, sound, and/or connotation to CDC's registered QwikStrip® mark.

86.   Defendants use the SmartStrip name in connection with identical or at least highly-related goods to those identified in CDC's '367 Registration.

87.   Defendants target the same customers for the SmartStrip products as CDC targets for its QwikStrip® products.

88.   Defendants use many of the same marketing channels in connection with the SmartStrip products as used by CDC in connection with its QwikStrip® products, such as, *inter alia*, the Internet, print and electronic catalogues, at trade shows, and via distributors.

89.    Kerr's marketing and use of the SmartStrip name in commerce has caused and continues to cause confusion in the United States as to the source of the SmartStrip products.  For example, customers/distributors of Kerr's SmartStrip products have contacted CDC believing that CDC was affiliated with Kerr, which demonstrates that Kerr's infringing conduct has caused actual confusion in the marketplace as to the source of the QwikStrip/SmartStrip products and/or an affiliation between Kerr and CDC, which at the time did not in fact exist.

90.    Defendants' actions constitute infringement of CDC's federally registered trademark QwikStrip® mark in violation of section 32(a) of the Lanham Act, 15 USC § 1114.

91.    Defendants' use of a confusingly similar product name to CDC's registered trademark for interproximal dental tools in interstate commerce has caused, is causing, and will continue to cause damage to CDC's business, reputation, goodwill, profits, and the strength of CDC's federally registered trademark rights.

92.    On information and belief, and by virtue of Defendants' prior distribution of CDC's QwikStrip® product in addition to the widespread exposure and success of CDC's QwikStrip® products, Defendants were fully aware of CDC and its trademark rights in the QwikStrip® mark when Kerr began selling its SmartStrip products, yet Defendants proceeded anyway to use a colorable imitation of CDC's registered trademark in connection with Kerr's interproximal dental tools, and are continuing to do so, thus rendering Defendants' trademark infringement willful and deliberate.

**COUNT IV**

**VIOLATION OF 43(a) OF THE LANHAM ACT**
**(FEDERAL TRADEMARK INFRINGEMENT)**

93.   CDC incorporates by reference and realleges the allegations contained in all of the preceding paragraphs as if fully set forth herein.

94.   Defendants have used, and are continuing to use, in interstate commerce and without authorization from CDC, a colorable imitation of CDC's QwikStrip® trademark by advertising, promoting, distributing, offering for sale, and selling interproximal dental tools under the name SmartStrip.

95.   Defendants' use of the SmartStrip name is similar in appearance, sound, and/or connotation to CDC's registered QwikStrip® mark.

96.   Defendants use the SmartStrip name on identical or at least substantially related goods to those sold by CDC under its QwikStrip® mark.

97.   Defendants target the same customers for the SmartStrip products as CDC targets for its QwikStrip® products.

98.   Defendants use the same marketing channels in connection with the SmartStrip products as used by CDC in connection with its QwikStrip® products, such as, *inter alia*, the Internet, print and electronic catalogues, at trade shows, and via distributors.

99.   Defendants are using in commerce a colorable imitation of CDC's QwikStrip® mark by advertising, promoting, distributing, offering for sale, and selling SmartStrip interproximal dental tools, which is likely to cause confusion and/or mistake and which is likely to deceive customers as to the source of the SmartStrip products or as to Defendants' affiliation, connection, approval, sponsorship, or association with CDC, or vice versa.

100.  Defendants' actions constitute infringement of CDC's QwikStrip® trademark in violation of section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

101.  Defendants' use of a confusingly similar product name to CDC's trademark in connection with interproximal dental tools in interstate commerce has caused, is causing, and will continue to cause damage to CDC's business, reputation, goodwill, profits, and the strength of CDC's QwikStrip® trademark rights.

102.  On information and belief, and by virtue of the widespread exposure and success of CDC's QwikStrip® products, Defendants were fully aware of CDC and its trademark rights in the QwikStrip® mark when CDC began selling its QwikStrip® products, yet Defendants proceeded anyway to use a colorable imitation of CDC's QwikStrip® trademark in connection with interproximal dental tools, and is continuing to do so, thus rendering Defendants' trademark infringement willful and deliberate.

**COUNT V**

**VIOLATION OF 43(a) OF THE LANHAM ACT**
**(INFRINGEMENT OF CDC UNREGISTERED TRADEMARKS IN ITS PRODUCT DESIGNAIONS)**

103.  CDC incorporates by reference and realleges the allegations contained in all of the preceding paragraphs as if fully set forth herein.

104. Defendants have used and continue to use product designations (i.e., SKUs) for the SmartStrip products (including and without limitation the following SKUs: SS-SF, SS-F, SS-M, SS-C, SSC-SF, SSC-F, SSC-M, SSC-C, SSDS-SF, SSDS-F, SSDS-M, and SSDS-C) that are confusingly similar to CDC's product designations (i.e., SKUs) for the QwikStrip® products (including and without limitation the following SKUs: QS-SF, QS-F, QS-M, QS-C, QSC-SF, QSC-F, QSC-M, QSC-C, QSDS-SF, QSDS-F, QSDS-M, and QSDS-C).

105. Defendants have used and continue to use these confusingly similar product designations to promote, market, label, and/or sell the same or substantially the same goods (i.e., interproximal stripping tools for removing excess dental cement), which are in direct competition with one another.

106. Defendants' acts constitute a false designation of origin, false or misleading description of fact, or false or misleading representations of fact, and are unfair competition in violation of section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) because these acts are likely to cause confusion, mistake, or deception among purchasers or potential purchasers of Defendants' SmartStrip products as to the source or origin of these goods.

107. Purchasers or potential purchasers are likely to believe that Defendants' SmartStrip products originate from or are connected in some way with, affiliated with, associated with, approved by, sponsored by, or endorsed by CDC because Defendants promote, market, label, and/or sell the SmartStrip products with a confusingly similar name, confusingly similar product designations, confusingly similar packaging, and the same or substantially the same color scheme / color coding as CDC's QwikStrip® products.

108. Defendants knew of CDC's product designations before Defendants introduced the SmartStrip product line of dental tools to the market because Sybron and/or Axis Dental, which are Envista subsidiaries/predecessors in interest, sold CDC's QwikStrip® products before the SmartStrip product line of dental tools was introduced.

109. On information and belief, Defendants intentionally chose to use product designations (SKUs) for its SmartStrip products that are confusingly similar to CDC's

product designations (SKUs) for the QwikStrip® products in order to benefit from the goodwill associated with CDC's QwikStrip® products and product designations, which customers, including dentist offices, have come to associate with CDC and routinely use to re-order/re-purchase product.

110. On information and belief, Defendants acted knowingly, willfully, and deliberately and with the intent to deceive and mislead customers and potential customers and have profited from their wrongful conduct.

111. As a result of Defendants' conduct, CDC has suffered and will continue to suffer irreparable injury and damages for which CDC is entitled to relief.

**COUNT VI**

**VIOLATION OF 43(a) OF THE LANHAM ACT
(INFRINGEMENT OF CDC UNREGISTERED TRADEDRESS)**

112. CDC incorporates by reference and realleges the allegations contained in all of the preceding paragraphs as if fully set forth herein.

113. As a result of CDC's established use, marketing, and sales of its QwikStrip® product line of dental tools, CDC's trade dress for its QwikStrip® products, including without limitation, CDC's color scheme / color coding for its QwikStrip® product line of dental tools, has become favorably known to distributors and end-users as identifying CDC as the source thereof, and accordingly, the trade dress of CDC's QwikStrip® product line of dental tools has acquired secondary meaning.

114. CDC's distinctive trade dress in its QwikStrip® product line of dental tools has become recognized as an indicator of origin with CDC and its business. Distributors and consumers, including dentist's offices, have come to rely on this distinctive trade dress as an indication that they are receiving the products of CDC.

115. Consumers, including dentist's offices, have also come to recognize that CDC's QwikStrip® product line of dental tools is of high quality and, as a result, the distinctive trade dress, including CDC's color scheme / color coding for its QwikStrip® product line of dental tools has come to represent valuable goodwill which CDC owns.

116. Defendants have infringed on and benefited / profited from CDC's trade dress by advertising, offering for sale, and/or selling SmartStrip products that copy the same color scheme / color coding as CDC's QwikStrip® product line.

117. Defendants' aforementioned commercial activities constitute an infringement of CDC's trade dress under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

118. Defendants' SmartStrip products directly compete with and were designed and are marketed as a direct substitute for CDC's QwikStrip® products.  As a result, Defendants have used CDC's trade dress on the same or equivalent goods.

119. Defendants' misappropriation of CDC's distinctive and non-functional trade dress has caused and is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of the SmartStrip products, in that the trade and consumers are likely to mistakenly believe that the SmartStrip products originate with, are associated with, or are endorsed by CDC.

120. There is nearly a limitless number of other colors, which could have been used on the SmartStrip products sold by Kerr, rather than using a color scheme / color coding that directly copies CDC's non-functional and well-known trade dress for its QwikStrip® line of dental tools.

121.  For the foregoing reasons, Defendants have violated and is continuing to violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

122.  CDC has no adequate remedy at law and is suffering irreparable harm as a result of Defendants' copying and misappropriation of CDC's trade dress for its QwikStrip® products.

123.  Defendants have been knowingly and willfully infringing CDC's trade dress for its QwikStrip® products since the SmartStrip products were introduced on or about April 1, 2016.

**COUNT VII**
**TEXAS DECEPTIVE TRADE PRACTICES ACT**
**(DTPA § 17.46)**

124.  CDC incorporates by reference and realleges the allegations contained in all of the preceding paragraphs as if fully set forth herein.

125.  Defendants' actions constitute unfair, unconscionable, or deceptive methods, acts or practices in conducting trade or commerce in violation of DTPA § 17.46.

126.  Defendants' use of the "SmartStrip" name in combination with the same or similar packaging, color scheme / color coding, and product identifiers (SKUs) as those used by CDC for its QwikStrip® product causes a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services in violation of DTPA § 17.46(b)(2).

127.  Defendants' actions have caused and, unless enjoined by this Court, will continue to cause substantial injury and loss to the public and to CDC. Based on

Defendants' unlawful activities, CDC is entitled to injunctive relief and to recover damages and, as appropriate, punitive damages, costs, and reasonable attorneys' fees.

## COUNT VIII
## COMMON LAW UNFAIR COMPETITION

128. CDC incorporates by reference and realleges the allegations contained in all of the preceding paragraphs as if fully set forth herein.

129. Defendants were aware of CDC's QwikStrip® trademark prior to use of SmartStrip and adapted and used SmartStrip in disregard of CDC's rights.

130. Defendants' actions have resulted in the misappropriation of, and trading upon, CDC's valuable goodwill and business reputation at CDC's expense. The effect of Defendants' misappropriation of the goodwill symbolized by the QwikStrip® mark has and will continue to unjustly enrich Defendants, damage CDC, and confuse and/or deceive the public.

131. Defendants' actions constitute unfair competition with CDC which has caused and will continue to cause irreparable injury to CDCs goodwill and reputation unless enjoined.

132. An award of money damages alone cannot fully compensate CDC for its injuries, and CDC has no adequate remedy at law.

## COUNT IX
## UNJUST ENRICHMENT

133. CDC incorporates by reference and realleges the allegations contained in all of the preceding paragraphs as if fully set forth herein.

134. By misappropriating CDC's valuable goodwill and reputation through the improper use of a name confusingly similar to QwikStrip®, Defendants have been unjustly enriched to the detriment of CDC.

135. Defendants are realizing profit and will continue to realize a profit from the improper use of a product name that is confusingly similar to QwikStrip® and from Defendants' false advertising.

136. An award of money damages alone cannot fully compensate CDC for its injuries, and CDC has no adequate remedy at law.

137. CDC is entitled to compensatory damages in the form of restitution and such other further relief as the Court deems equitable and just.

## DEMAND FOR A JURY TRIAL

CDC demands a trial by jury on all issues triable of right by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

CDC respectfully requests that this Court enter judgment in its favor and grant the following relief:

(i) judgment and order that Defendants have infringed one or more claims of each of the patents-in-suit;

(ii) judgment and order that Defendants must pay CDC past and future damages under 35 U.S.C. § 284, including supplemental damages arising from any continuing post-verdict infringement for the time between trial and entry of the

final judgment, together within an accounting, as needed, as provided under 35 U.S.C. § 284;

(iii) judgment and order that Defendants must pay CDC reasonable and ongoing royalties and/or damages on a go-forward basis after final judgment;

(iv) permanent injunction prohibiting Defendants from further infringement of the infringed claims of the patent-in-suit;

(v) judgment and order that Defendants' patent infringement has been willful;

(vi) judgment and order that all damages awarded to CDC for Defendants' patent infringement be trebled pursuant to 35 U.S.C. § 284;

(vii) judgment and order that Defendants' use in commerce of a colorable imitation of CDC's QwikStrip® mark infringes the '367 trademark registration in violation of 15 U.S.C. § 1114;

(viii) judgment and order that Defendants' use in commerce of a colorable imitation of CDC's QwikStrip® mark infringes the '367 trademark registration in violation of 15 U.S.C. § 1125(a);

(ix) judgment and order that Defendants' trademark infringement has been willful;

(x) judgment and order that CDC is entitled to damages for Defendants' trademark infringement in the form of the disgorgement of Defendants' profits from the sale of the Accused Products;

(xi) judgment and order that Defendants must pay CDC's costs; and

(xii) judgment and order that this Court find this case exceptional and order Defendants to pay CDC's attorneys' fees.

Dated:  June 27, 2024

Respectfully submitted,


/s/ Scott Yackey

Scott Yackey (Texas Bar No. 24100052)
HARNESS, DICKEY & PIERCE, P.L.C.
2801 Network Boulevard
Suite 600
Frisco, TX 75034
Tel.: 469-777-5400
Fax: 469-777-5401
syackey@harnessip.com

Glenn E. Forbis (P52119) (to be admitted *pro hac vice*)
Lead Attorney
Robert M. Siminski (P44319) (to be admitted *pro hac vice*)
J. Bradley Luchsinger (P76115) (to be admitted *pro hac vice*)
HARNESS, DICKEY & PIERCE, P.L.C.
5445 Corporate Drive, Suite 200
Troy, MI 48098
248-641-1600
gforbis@harnessip.com
rmsiminski@harnessip.com
bluchsinger@harnessip.com

*Attorneys for Plaintiff*

28392001